[No. 17304.  Department Two.  December 5, 1922.]

## THE STATE OF WASHINGTON, *Respondent,* v. DOLLY M. JOHNSON, *Appellant.*[1]

CRIMINAL LAW (143)—EVIDENCE—DOCUMENTARY EVIDENCE—CERTIFIED COPIES. Under Rem. Comp. Stat., § 1257, providing that copies of official records certified by the lawful custodian are admissible in evidence, official death records kept in compliance with Id., §§ 6011-6039 are admissible in evidence to prove a death on a certain day in a prosecution for the forgery of the name of the deceased on that day, where the death was a circumstance relevant to the inquiry before the court.

SAME (82, 276)—BURDEN OF PROOF—MATTERS OF DEFENSE—INSTRUCTIONS AS TO ALIBI. Upon an issue as to an alibi, it is proper to instruct that the burden of proof is upon the accused to support his defense to the extent of establishing reasonable doubt as to his guilt.

SAME (324)—NEW TRIAL—SEPARATION OF JURY. It is not such a separation of a jury as to constitute prejudicial error in a criminal case, when one of the jurors was accidentally locked in the jury room and separated from his fellow jurors for about half an hour, during which time he saw and communicated with no one.

Appeal from a judgment of the superior court for King county, Brinker, J., entered December 23, 1921, upon a trial and conviction of forgery. Affirmed.

*Thomas J. Casey,* for appellant.

*Malcolm Douglas* and *T. H. Patterson,* for respondent.

[1]Reported in 210 Pac. 774.

PARKER, C. J.—The defendant, Dolly M. Johnson, was charged by information, filed in the superior court for King county, with the crime of forgery by fraudulently subscribing and forging the name of Kate Mahoney to a power of attorney purporting to be executed by Kate Mahoney at Seattle, in King county, on April 16, 1921. The trial resulted in a verdict of guilty being rendered against the defendant, upon which a judgment was accordingly rendered against her, from which she has appealed to this court.

It is contended that the evidence introduced upon the trial was not sufficient to sustain the verdict and judgment, and that the trial court should have so decided as a matter of law by directing a verdict of not guilty in favor of the defendant. We do not find in the record before us anything to indicate that the trial court was asked to so rule upon the sufficiency of evidence by any motion or request to take the case away from the jury. However, a careful review of the evidence convinces us that it was sufficient to support the verdict and judgment. We think this contention does not call for further notice.

There was introduced in evidence by the prosecution a certified copy of the official record showing that Kate Mahoney died at Seattle on April 16, 1921, the day of the alleged commission of the crime of forgery by appellant. It is contended that the admission of this certified copy of the record was error to the prejudice of appellant. The argument presented in that behalf is such that it is difficult for us to understand in what respect counsel claims the introduction of this death certificate to be irrelevant or incompetent. It purports upon its face to be made by the proper custodian of the official records of deaths made and kept in compliance with our statutes relating to vital statis-

tics, §§ 6011 to 6039, inclusive, Rem. Comp. Stat. According to the provisions of § 1257, Rem. Comp. Stat., relating to documentary evidence, it seems that copies of official records, certified by the lawful custodians thereof, are admissible in evidence upon trials in the superior court. We are unable to say from the record before us that this death certificate was inadmissible upon the trial of this case, either because the fact sought to be proven was immaterial, or because the certificate itself was incompetent to prove such fact. We may observe that it appears to us, in view of the circumstances shown, that the death of Kate Mahoney and the date thereof were circumstances the evidence of which was relevant to the inquiry before the court.

It is claimed that the trial court erred in giving an instruction touching the extent of the burden of proof resting upon appellant with reference to her defense of alibi. The instruction complained of was in substance the same as that approved by this court in *State v. Rosi*, 120 Wash. 514, 208 Pac. 15. We think there was no error committed by the trial court in giving the instruction complained of.

It is contended that the jurors were allowed to separate during the trial, to the prejudice of appellant. By affidavits filed touching this contention, it appears that the trial was being held in one of the court rooms in the west wing of the King county court house. During recesses of the court, the jurors were kept in the jury room adjoining the court room, access to which jury room was only from the public halls of the building through the court room, the jury being in charge of two bailiffs. During the morning, an hour or so before the opening of court on the day in question, there was a public demonstration to be had along the street on the east side of the court house, this being a citi-

zens' demonstration in escorting a person of note about the city as a guest of the city. The jurors expressing a desire to see this demonstration, they were taken by the bailiffs to a room in the east wing of the court house where they could see from the windows the demonstration upon the street. The bailiffs took the jurors—as they believed all of them—from the jury room in the west wing of the building, locking the door of the jury room, passing through the court room into the hall and locking the door of the court room; proceeding thence to a room in the east wing of the building overlooking the street on that side. In about a half hour the jurors were returned to their room in the west wing of the building. It was then discovered that one of the jurors had been, plainly without his own fault, left in the jury room and had been there with the doors of the court room and the jury room locked during all this half hour's absence of the other eleven jurors. This was caused by the fact that the juror was in the lavatory, adjoining and opening only into the jury room, when the other eleven jurors were taken out, he not noticing that they were going, and neither they nor the bailiffs noticing that he had not come along. During the absence of the bailiffs and the other eleven jurors, the juror saw no one, being locked in the jury room alone.

We think, under our decision in *State v. Harris*, 99 Wash. 475, 169 Pac. 971, L. R. A. 1918C 318, wherein our prior decisions are reviewed, this was not such a separation of the jurors as to constitute error to the prejudice of appellant. If there was a physical separation of the jurors, the fact nevertheless remains that all the jurors, including the one remaining locked in the jury room, were in the custody and control of the bailiffs. Contentions of this nature, in their last

analysis, have to do more with the question of proper sequestration of jurors by officers having them in charge, than to the bare, naked question of whether or not they have been physically separated during the trial and their deliberations. In *State v. Harris, supra,* we said:

"It may be questioned, moreover, whether the courts have not placed a too narrow construction on the word 'separate' as used in the statutes. The object and purpose of keeping them sequestered is, and has always been, to keep them from being influenced with reference to the matters given them in charge, by ulterior practices. This purpose is as well accomplished when the jury are kept singly under the charge of sworn officers of the court as it is when they are kept under like officers in a body."

We are of the opinion that there has not been here shown such a separation of the jury as to constitute error prejudicial to appellant. The judgment is affirmed.

FULLERTON, MAIN, TOLMAN, and HOVEY, JJ., concur.