[No. 39951. Department One. January 9, 1969.]

THE STATE OF WASHINGTON, *Respondent,* v. WALTER KEARNEY, *Appellant.*\*

*\*Reported in 449 P.2d 400.*

*Anderson, Hunter & Carlson,* by *William W. Baker,* for appellant (appointed counsel for appeal).

*Robert E. Schillberg* and *Eugene Butler,* for respondent.

OTT, J.†—Walter Robert Kearney was convicted of the crime of indecent liberties upon the person of a 12-year-old boy. From entry of the judgment and sentence based upon the jury's verdict, Mr. Kearney has appealed.

Appellant assigns error to the introduction into evidence of the lineup and in-court identification of appellant as being tainted by prior photographic identification procedure and thus violative of his right to due process of law.

The trial judge, in the absence of the jury, conducted a hearing to determine the admissibility of the identification evidence. At the hearing it was established, *inter alia,* that the offense charged was committed in Snohomish County on July 6, 1966 at approximately 3 p.m.; that the accused gave each of the three identifying witnesses, ages 12, 11 and 9, a ride on his Honda; that each of the boys had an opportunity to observe the accused for more than ½ hour; July 7, 1966 two mug shots of the same person were shown to the boys and they were asked, "if this was the guy"; at that time the officer did not suggest to the boys that he had independent evidence that the photographs shown were of the assailant; each of the boys *affirmed* their identification of appellant; and on July 8, 1966, each of the boys, at separate times, picked appellant out of a lineup of five other inmates, some of which were similar in appearance, size and age. At the close of the evidence, the court in an oral opinion held in part:

---

†Judge Ott is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

[T]hese three boys, had an adequate opportunity to observe the Defendant on prior occasions so as to have had an independent recollection of his identification, disregarding the suggestion that might have been made to them, was made to them by presentation the following day of a picture of this Defendant and then following that, the lineup investigation.

This Court finds that this evidence clearly and convincingly shows that there was adequate opportunity for all of these boys to observe this Defendant for a sufficient length of time to form in their mind an opinion as to his appearance, sufficient opinion so as to be able to identify him and to have their recollection firmly implanted in their minds, so as not to have been unduly influenced by the showing of the picture.

. . . .

[The identification procedure] was conducted in a reasonably fair fashion, the boys were escorted to the jail cell where the Defendant was located with five others, all wearing the same color coveralls; they saw or viewed the men separately and made separate identifications without any hint of suggestion at that time, and the photographs that have been admitted in evidence of the various ones making up the lineup, at least two of them other than the Defendant had dark hair and were sufficiently like the Defendant in general appearance so that if the boys were not sure of their recollection, could have made and would have made their doubts known at that time.

[T]he Court has ruled and is ruling that the in court identification is admissible, and I'm finding and holding that the showing of the photograph to the boys, the photograph of the Defendant to the boys, and the lineup conducted thereafter were not conducted in such fashion so as to shake or to taint the independent recollection of this Defendant for the reasons I have mentioned.

■ In *Simmons v. United States,* 390 U.S. 377, 19 L. Ed. 2d 1247, 88 Sup. Ct. 967 (1968) the supreme court was concerned with the procedure to be followed in photographic identifications. While it is preferable that witnesses be shown photographs of more than one person, in that decision the court stated at 384:

[E]ach case must be considered on its own facts, and that convictions based on eyewitness identification at trial fol-

lowing a pretrial identification by photograph will be set aside on that ground *only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.* (Italics ours.)

In the instant case each of the boys visited with appellant for a substantial length of time, and the day after their encounter with him they made their photographic identifications. Two days after the incident in question the lineup identification was made by each boy, alone and separately. There is no suggestion that the lineup was improperly conducted. From these surrounding circumstances it is clear that the photographic identification procedure did not give rise to a "substantial likelihood of irreparable misidentification." The facts confirm that the lineup and in-court identifications of appellant were based upon the witnesses' original encounter with appellant rather than their photographic identifications. Applying the rule in *Simmons,* to the facts in the instant case, we conclude that the identification evidence was properly admitted and did not violate appellant's right to due process of law.

Appellant next assigns error to the introduction into evidence of photographs taken of his motorcycle when the vehicle had been impounded after an alleged illegal search and seizure. The circumstances which gave rise to the introduction of this evidence are substantially as follows: the boys gave the police officer the license number of the Honda the assailant was riding; from the registration number of the motorcycle, appellant's name and address were obtained; an officer went to the address and was met at the door by a Mrs. Stanley; he made inquiry as to whether appellant resided there, and she replied that "he stayed there sometimes"; she granted the officer permission to look around the premises for the motorcycle; it was found behind the house and was impounded; and pictures were taken of the motorcycle and introduced into evidence. The boys identified the pictures as being photographs of the Honda upon which appellant had given them a ride.

172

■ · The gravaman of appellant's objection was that Mrs. Stanley had no authority to allow a search of the premises, and that the search without a warrant was illegal and the photographs taken were therefore inadmissible. The person having apparent possession of the premises gave authority to the officer to make the search. There is no evidence that appellant had any dominion over the premises at the time the search was being accomplished. One who has no dominion over premises being searched has no status to question the legality of the search. *State v. Wooten*, 44 Wn.2d 177, 266 P.2d 342 (1954).

■ Appellant's third assignment of error is that the trial court erred in refusing to grant a continuance during the trial to obtain the testimony of Mrs. Stanley. Prior to the trial the defense counsel indicated that Mrs. Stanley, who then resided in New Hampshire, would be a necessary witness on behalf of the defense. The court thereupon advised appellant that the state would pay costs incident to bringing the witness to Snohomish County. Appellant did not cause a subpoena to be issued for Mrs. Stanley. During trial, over objection, the court permitted the officer to testify that Mrs. Stanley appeared to be living on the premises and had given him permission to search the premises for the motorcycle. Appellant then requested a continuance to subpoena Mrs. Stanley for trial. The request was denied. We have held that the granting or denying of a continuance is within the sound discretion of the trial judge and his decision will not be disturbed absent a showing of an abuse of that discretion. *State v. Cadena*, 74 Wn.2d 185, 443 P.2d 826 (1968). The motion for a continuance was not supported by an offer of proof or an affidavit stating what the witness might testify, or that her testimony would in any way contradict the testimony of the officer. RCW 10.46.080; *State v. Bates*, 52 Wn.2d 207, 324 P.2d 810 (1958). Under the circumstances as shown by the record, the trial judge did not err in the exercise of his discretion by denying the continuance.

■ Appellant's final assignment of error is that the

prosecuting attorney, in his closing argument, made a prejudicial statement as follows:

> There is nothing in any of the rights that the Defendant has that prevent him from subpoenaing witnesses on his behalf to testify, they will come to his aid. There is no requirement, there is nothing preventing him doing this, he has as much right to get a subpoena as we do, and if there is anyone that can come forward, he has a right to call that person as I have a right to call that person.

Appellant's objection to this statement was overruled. Appellant argues that through this statement and his failure to call witnesses, the jury could infer that he had none, and he was prejudiced thereby. The prosecutor's statement was not a comment on appellant's failure to call witnesses, but was a statement of the law with regard to his right to call witnesses. This court held in *State v. Brown,* 35 Wn.2d 379, 384-85, 213 P.2d 305 (1949):

> The practice of arguing questions of law to the jury, other than to read instructions which have been given by the court, is not favored, and the trial court may refuse to permit such argument. . . . But a case should not be reversed for this reason alone, unless it is manifest that prejudicial effects resulted therefrom. (Citations omitted.)

In the instant case the prosecutor's correct statement of the law was a permissible comment on instruction No. 3, which was in part as follows:

> It is the duty of the State to adduce before you during the progress of the trial, from witnesses who testify at its call, or from those called by the accused, that testimony and evidence which will so convince your minds.

With regard to possible prejudice, the court made it clear in instruction No. 14 what law was to be considered by the jury:

> You are further instructed that courts and judges are constituted to declare and to expound the law, among other things, and it is your duty to take the law from the court and to accept that to be the law which is stated in these instructions to be such, notwithstanding any state-

174

ment of any attorney as to what the law is or ought to be; . . . .

Furthermore, counsel for appellant, in his opening remarks, stated that appellant would not be a witness in his own behalf and that his case would consist of cross-examination of the state's witnesses. From the above circumstances, we conclude that appellant's case was not prejudiced before the jury by the prosecutor's remark.

The judgment is affirmed.

FINLEY, C. J., WEAVER, HALE, and NEILL, JJ., concur.

*Reported in 449 P.2d 692.